IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CONTAINER LIFE CYCLE MANAGEMENT
LLC and GREIF, INC.                                                                                 PLAINTIFFS

v.                                        NO. 6:20-CV-06001

SAFETY MANAGEMENT SERVICES CO.
and COTTINGHAM & BUTLER, INC.                                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

### I.     INTRODUCTION

Before the Court are two 12(b)(6) motions to dismiss filed by Cottingham & Butler, Inc. ("Cottingham"). After Cottingham filed its first motion (ECF No. 5), the Plaintiffs responded by amending their complaint. (ECF No. 14). Cottingham subsequently filed its second motion to dismiss (ECF No. 18), the Plaintiffs filed a response in opposition (ECF No. 21), and Cottingham filed a reply. (ECF No. 24). These matters are now ready for consideration. Cottingham's second motion to dismiss should be DENIED for the reasons that follow, and the first motion should be DENIED as moot.

### II.    PLEADING STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard is satisfied if the complaint alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

1

When deciding the merits of a Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations and draw all reasonable inferences in the non-movant's favor. *See Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008); *Maki v. Allete, Inc.*, 383 F.3d 740, 742 (8th Cir. 2004). A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Thomas W. Garland, Inc. v. City of St. Louis*, 596 F.2d 784, 787 (8th Cir. 1979). Ordinarily, only the facts alleged are considered in ruling on a 12(b)(6) motion, but when materials are attached to the complaint, the Court may consider these materials in construing the sufficiency of the complaint. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *see also Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003) (contract documents attached as exhibits may be considered when ruling on a motion to dismiss).

### III. BACKGROUND

For purposes of considering the second motion to dismiss, the facts are taken from the amended complaint (ECF No. 14) and construed in a light most favorable to the Plaintiffs, Container Life Cycle Management LLC ("CLCM") and Greif, Inc. ("Greif").

The Plaintiffs manufacture steel drums, plastic drums, and intermediate bulk containers.[1] Prior to the events at issue, Greif hired Safety Management Services Co. ("SMS") and Cottingham to perform safety audits and training services at CLCM facilities.[2] In connection with their services, consultant teams from SMS and Cottingham traveled to the facilities to inspect worksites, interview company employees, and collect information regarding safety

---

[1] Through a wholly owned subsidiary, Greif is the majority owner of CLCM. Greif is a Delaware corporation with its principal place of business in Ohio. Grief is registered to conduct business within Arkansas. CLCM is a Delaware corporation with its principal place of business in Arkansas.

[2] Both SMS and Cottingham are organized under the laws of Iowa, and their principal place of business is in Dubuque, Iowa.

incidents. After conducting inspections and interviews, SMS and Cottingham issued reports identifying areas of concern and safety risks. The reports also contained an audit score for each facility. The reports were issued on Cottingham's letterhead with a return address to Cottingham's corporate headquarters. To access the safety reports and audit scores, the Plaintiffs would login to an online portal operated by SMS and Cottingham. Occasionally, Greif officials met with SMS and Cottingham to discuss the inspection services. These meetings took place at Cottingham's corporate offices.

Cottingham and SMS's performance obligations required access to confidential information. The parties stipulate this access was governed by a confidentiality agreement signed between Greif and SMS in 2004.[3] According to the agreement, the business arrangement consisted of SMS's ability to obtain certain of Greif's workplace and safety-related information. The agreement stated that SMS and its representatives had a duty to return all confidential information to Greif and could not retain duplicates or extracts of such information. The term "confidential information" was defined to include Greif's health and safety records, its compliance monitoring systems and applications, as well as any software and computer systems developed or used by Greif. Regarding the use of confidential information, the confidentiality agreement said:

> [SMS] agrees that the Confidential Information will be used solely for the purpose of the Business Relationship with Greif and for no other purpose, and that all such information will be kept confidential by [SMS] and its Representatives at all times following such disclosures; provided, however, that (a) any such information may be disclosed to [SMS's] Representatives who need to know such information for the purpose of evaluating a possible Business Relationship between Greif and the Company (it being understood that such Representatives shall be informed by [SMS] of (i) the confidential nature of such information and (ii) the terms of this Agreement and the obligation of confidentiality undertaken by [SMS] under this Agreement, and shall agree to comply with the terms set forth herein), and (b) any

---

[3] Neither Cottingham nor CLCM were signatories to the confidentiality agreement.

>disclosure required by applicable law or legal proceedings may be made, subject to compliance with this Agreement.

(ECF No. 14-2, Confidentiality Agreement, at 2).

In 2015, SMS and Cottingham performed safety audits and OSHA training at CLCM facilities throughout the country, including a facility in Arkadelphia, Arkansas. They assigned Will Kramer, a newly employed occupational health and safety consultant, to work on these projects. The functions of Kramer's job required access to confidential information, particularly access to Greif's compliance management system ("CMS"). CMS contains data and information related to workplace injuries.

When conducting the inspections, Kramer covertly recorded conversations with Greif and CLCM employees, including employees located at the Arkadelphia facility. Furthermore, Kramer improperly accessed certain confidential information, such as data about historical employee injuries at CLCM facilities. Kramer allegedly collected this information to construct a false narrative that the Plaintiffs were unresponsive and indifferent to workplace safety conditions. In the fall of 2016, Kramer provided this information and the recordings to media outlets, politicians, and various governmental agencies. Kramer's revelations led to an onslaught of regulatory investigations and public attention. Approximately fifty regulatory inspections occurred at CLCM's facilities during the six-month period following Kramer's disclosures. Greif and CLCM allege they suffered damages exceeding $1,000,000. Specifically, they allege these damages consist of environmental consulting expenses, public relations expenses, attorneys' fees, fines, investigation and litigation expenses, reputational damage and loss of goodwill, and equipment expenditure expenses.

In this action, Greif and CLCM assert three claims for relief. First, Greif alleges breach of the confidentiality agreement. Greif contends that SMS and Cottingham failed to meet their contractual obligations when Kramer improperly accessed and disclosed confidential information. Second, Greif and CLCM allege breach of a services contract, pleading that SMS and Cottingham had to perform certain obligations under the agreement, e.g., they were required to provide competent health and safety consultants, and they had to adequately screen and supervise the consultants.[4] Lastly, Greif and CLCM allege negligent hiring, supervision, and retention. They plead that SMS and Cottingham failed to exercise reasonable care when they hired and retained Kramer as an employee. The basis of this claim is that Kramer allegedly had anti-industry and anti-management sentiments prior to being hired as a consultant.[5]

For ease of reference, the Court refers to the breach of confidentiality agreement claim as "Count One," the breach of services contract claim as "Count Two," and the negligent hiring, supervision, and retention claim as "Count Three."

## IV.   DISCUSSION

The main thrust of the second motion to dismiss is the amended complaint fails to allege a proper basis of liability against Cottingham. Cottingham asserts that it was not a party to the contracts at issue. Cottingham stipulates it is a shareholder of SMS, and it contends the Plaintiffs have failed to plead a sufficient basis to pierce the corporate veil

---

[4] Unlike the confidentiality agreement, the parties have not submitted a services contract on the record. For purposes of a motion to dismiss, it is not necessary to attach the contract to the complaint. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327, at 762 (2d ed. 1990).

[5] To support this contention, the Plaintiffs attach an article written by Kramer to the amended complaint. In the article, Kramer mentioned that he previously worked in the field of safety and risk management inspections. Kramer stated that he "aided and abetted [business owners] in keeping their workplaces unsafe," and asserted that business owners do not value workplace safety. (ECF No. 14-3, at 4).

between SMS and Cottingham. The Plaintiffs maintain that SMS and Cottingham failed to distinguish themselves during their business dealings, and accordingly, both should be liable for the misconduct alleged. In addition, Cottingham contends that only SMS employed Will Kramer. The Plaintiffs respond by asserting that both entities shared their employees.

### A. Contractual Claims

Under Count Two, the amended complaint pleads the existence of a services contract in which Cottingham owed obligations to the Plaintiffs. None of the parties have submitted the services contract on the record. The Court finds that an inquiry into veil piercing under Count II would be premature at this moment. For purposes of a motion to dismiss, the Court must assume that Cottingham owed contractual obligations under the services contract. *See Iqbal*, 556 U.S. at 678 (stating courts must accept as true all factual allegations in the complaint). Under this assumption, the amended complaint pleads sufficient factual allegations to support a breach of contract claim under Count Two, i.e., the Plaintiffs plead contractual obligations owed by Cottingham, breach of these obligations, and resulting damages. *See, e.g., Pownall v. PNC Bank*, 2010 WL 3515661, at *2 (N.D. Ohio Aug. 31, 2010) (plaintiff must allege existence of contract, breach by the defendant, and damage or loss to the plaintiff); *Smith v. Eisen*, 97 Ark. App. 130, 139, 245 S.W.3d 160, 168-69 (2006) ("the complaint need only assert the existence of an enforceable contract between the plaintiff and the defendant, the obligation of the defendant thereunder, a violation by the defendant, and damages resulting to the plaintiff from the breach.").

Unlike the services contract, the parties have submitted the confidentiality agreement for the Court's review. Because Cottingham was not a signatory to this agreement, it is necessary to determine whether the amended complaint pleads sufficient facts to establish a veil piercing theory of liability. If veil piercing is properly alleged, the factual allegations relevant to Count One support the essential elements of a breach of contract claim, i.e., contractual obligations, breach of those obligations, and resulting damages. Before determining the issue of veil piercing, the Court must decide the preliminary matter of what law should govern.

### 1. Choice of Law – Count One

Paragraph 9 of the confidentiality agreement states: "This Agreement shall be governed by, and construed in accordance with, the internal substantive laws of the State of Ohio, without regard to conflicts of law principles." Based on this language, Cottingham argues that Ohio law governs. The Plaintiffs contend that Arkansas law should apply because state law is viewed to determine whether and how to pierce the corporate veil. *See Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 649 (8th Cir. 2003). It appears the Arkansas Supreme Court has not spoken on the issue of choice of law in piercing the corporate veil. This Court must, therefore, predict how the Arkansas Supreme Court would rule if faced with the issue of what law to apply. *Curtis Lumber Co., Inc. v. Louisiana Pacific Corp.*, 618 F.3d 762, 771 (8th Cir. 2010) (explaining that a federal court must predict how the Arkansas Supreme Court would decide an issue when state law is undeveloped); *see also Modern Leasing Inc., of Iowa v. Falcon Mfg. of California, Inc.*, 888 F.2d 59, 62 (8th Cir. 1989) (stating a "federal district court must apply the conflict of law rules of the state in which it sits.").

The Arkansas business and commercial code says the State of Arkansas cannot "regulate the organization or *internal affairs* of a foreign corporation," even if the corporation has permission to conduct business within the state. Ark. Code Ann. § 4-75-1505(c) (emphasis added). When considering this provision, this Court predicts that Arkansas's highest court would apply the law of the state of incorporation to the veil-piercing inquiry presented by this case. This prediction is also informed by a conflict of law principle known as the "internal affairs doctrine." The internal affairs doctrine is premised on the notion that only one state should have the authority to regulate a corporation's internal affairs. *Edgar v. MITE Corp*. 457 U.S. 624, 645 (1982) (citing Restatement (Second) of Conflict of Laws § 302). The internal affairs of a corporation comprise "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Id*. While matters external to the corporation are governed by more general choice of law rules, internal matters are governed by the law of the state of incorporation:

> [T]he law of the state of incorporation normally determines issues relating to the *internal* affairs of a corporation. Application of that body of law achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation.... Different conflicts principles apply, however, where the rights of third parties *external* the corporation are at issue.

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 621 (1983) (citing Restatement (Second) of Conflict of Laws §§ 301 and 302) (emphasis in original).

Furthermore, the Court notes the majority of jurisdictions addressing the question of choice of law in the context of veil piercing apply the law of the state of incorporation. *See Alli v. United States*, 83 Fed. Cl. 250, 276 (2008) ("when a court considers disregarding the corporate entity, *i.e.* 'piercing the corporate veil,' the court applies the law of the state of incorporation." (internal citations omitted); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529

8

F.3d 371, 378 (7th Cir. 2008) ("Texas has the same choice-of-law rule for veil-piercing claims as Illinois, namely that the law of the state of incorporation governs such claims"); *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 647 (5th Cir. 2002) (stating that, under Louisiana law, the law of the state of incorporation governs the determination of piercing the corporate veil) ; *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("The law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders…"); *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 359 F.Supp.2d 497, 501 n.6 (E.D. Va. 2005 ("[u]nder Virginia law, the law of the state of incorporation determines whether the corporate veil may be pierced"); *Select Creations, Inc. v. Paliafito Am., Inc.*, 852 F. Supp. 740, 774 (E.D. Wis. 1994) ("A court applies the law of the state of incorporation of the controlled corporation to determine whether the corporate form should be disregarded.").

Other district courts within the Eighth Circuit have also looked to the state of incorporation when confronting choice of law issues in similar circumstances. In two cases involving contractual disputes, these courts characterized veil piercing as an internal corporate matter, and therefore, applied the law of the state of incorporation. *See Tyson Fresh Meats, Inc. v. Lauer Ltd.*, *L.L.C.*, 918 F.Supp.2d 835, 850 (N.D. Iowa 2013) (applying the law of the state of incorporation, even when the contract at issue called for delivery to a different state); *Matson Logistics*, *LLC v. Smiens*, No. CIV. 12-400 ADM/JJK, 2012 WL 2005607, at *6 (D. Minn. June 5, 2012) (law of the state of incorporation applied when the agreement said the "interpretation, construction and enforcement of [the agreement] will be governed the laws" of another state).

Section 307 of the Restatement (Second) of Conflict of Laws provides the basis for applying the law of the state of incorporation to the issue of veil piercing. *See, e.g.*, *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F.Supp. 345, 348-49 (M.D.N.C. 1995) (holding the state's highest court would likely follow § 307 in holding that the law of the state of incorporation applies); *Tomlinson v. Combined Underwriters Life Ins. Co.*, No. 08-CV-259, 2009 WL 2601940, at *3 (N.D. Okla. Aug. 21, 2009) (same). The rationale underlying this determination is threefold: (1) to the extent the shareholders anticipate issues regarding liability, they would usually expect the law of the state of incorporation to apply; (2) application of the law of the state of incorporation facilitates uniform treatment of shareholders; and (3) the state of incorporation usually has the dominant interest in determining issues related to shareholder liability. *See* Restatement (Second) Conflict of Laws § 307, cmt. a.

When considering the present case, the Court finds the state of incorporation has the greatest interest in determining when the corporate form should be disregarded. *Pan Am Travel Effort v. Travel Committee, Inc.*, 756 F.Supp. 126, 131 (S.D.N.Y. 1991) (describing a corporation as a creature of state law "whose primary purpose is to insulate shareholders from legal liability."). Veil piercing is an issue that is "collateral to and not part of the parties' negotiations or expectations with respect to the contract. It involves imposing liability on third-party shareholders as opposed to governing the parties' obligations under the contract." *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F. Supp. 345, 348 (M.D.N.C. 1995). Furthermore, application of the law of the state of incorporation provides certainty and predictability to those parties with interests in a corporation, i.e., to the shareholders. It also ensures that the corporation and its shareholders are not subject to conflicting legal standards from various states. *Resolution Trust Corp. v. Camhi*, 861 F.Supp. 1121, 1126 (D. Conn. 1994) ("The internal affairs

doctrine developed on the principle that, in order to prevent corporations from being faced with conflicting demands, the authority to regulate a corporation's internal affairs should not rest with several jurisdictions.") (citing *Edgar*, 457 U.S. at 645).

Accordingly, the Court believes the Arkansas Supreme Court would likely apply the law of the state of incorporation in determining whether the corporate veil may be pierced. The veil-piercing inquiry in this case relates to Cottingham and SMS. Both of these entities are organized under the laws of Iowa, and thus, the Court will apply Iowa law.

### 2. Piercing the Corporate Veil – Count One

Under Iowa law, an entity's corporate formation can be disregarded by piercing the corporate veil.[6] *Team Cent., Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 923 (Iowa 1978). Disregarding an entity's corporate formation is "an extraordinary measure that should be reserved for exceptional circumstances, … and the party seeking to do so has the burden of proof." *HOK Sports, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007) (applying Iowa law). A court may disregard the corporate structure when "the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *C. Mac Chambers Co. v. Iowa Tae Kwon Do and Academy, Inc.*, 412 N.W.2d 593, 597 (Iowa 1987). Factors supporting a finding of veil piercing are: (1) the corporation is undercapitalized; (2) the corporation lacks separate books; (3) the corporation's finances are not kept separate from individual finances, or individual obligations are paid by the corporation; (4) the corporation is used to promote fraud or illegality; (5) corporate formalities

---

[6] Cottingham also suggests the Plaintiffs fail to plead a sufficient basis to establish alter-ego liability. Iowa courts recognize that a corporation can be the alter-ego of another person. *See Union Ins. Co. v. Hull & Co., Inc.*, 831 F.Supp.2d 1060, 1065 (S.D. Iowa 2011). However, this Court has not located Iowa authority addressing whether a corporation can be the alter-ego of another corporate entity. Thus, the Court will solely consider the issue of veil piercing.

11

are not followed; and (6) the corporation is merely a sham. *In re Marriage of Ballstaedt*, 606 N.W.2d 345, 349 (Iowa 2000). The party seeking to pierce the veil need not prove all six factors, but it must prove at least one of the factors. *HOK Sports*, 495 F.3d at 936.

This Court recognizes that veil piercing is a factually intensive inquiry, and it acknowledges the possibility of prematurely deciding this issue on a motion to dismiss. On a 12(b)(6) motion to dismiss, the Court accepts the alleged factual allegations as true and grants all reasonable inferences that can be drawn in the Plaintiff's favor. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). In the present case, the amended complaint fairly infers that SMS and Cottingham materially failed to follow corporate formalities and operated as if they were a singular business entity in their dealings with the Plaintiffs. *In re Marriage of Ballstaedt*, 606 N.W.2d at 349 (listing the failure to follow corporate formalities as a veil-piercing factor). The failure to follow corporate formalities in the ordinary course of business does not necessarily justify veil piercing, *see Tannahill v. Aunspach*, 538 N.W.2d 871, 874 (1995), but the corporate form may be disregarded when the corporation serves no legitimate business purpose or is primarily used as an intermediary to perpetuate fraud. *C. Mac Chambers*, 412 N.W.2d at 597. The Court finds the facts alleged in the amended complaint "raise a reasonable expectation that discovery will reveal evidence" of Cottingham's relationship with SMS. *Twombly*, 550 U.S. at 556. Thus, dismissal is inappropriate because the Plaintiffs are entitled to discovery and a merits determination on the issue of whether the veil should be pierced between SMS and Cottingham.

### B. Tort Claims

Count Three is based on the alleged failure to exercise care in the hiring, supervision, and retention of Will Kramer as an employee. Cottingham insists that only

SMS employed Kramer. However, for purposes of a motion to dismiss, the Court accepts as true the allegation that Kramer was employed by Cottingham. *See Gallagher*, 699 F.3d at 1016. The amended complaint contains sufficient factual detail to suggest that Cottingham's negligence caused the damage alleged. Specifically, the amended complaint states that Cottingham and SMS failed to review Kramer's background prior to when he was hired; they failed to adequately supervise Kramer; and their negligence resulted in the Plaintiffs' damages. *See Madden v. Aldrich*, 346 Ark. 405, 415, 58 S.W.3d 342, 350 (2001) *See* Ark. Model Jury Instr., Civil AMI 709A (describing the elements of claims for negligent hiring, supervision, and retention); *Simpkins v. Grace Brethren Church of Delaware*, 16 N.E.3d 687, 699 (Ohio Ct. App. 2014) ("Negligent retention, supervision, [and] hiring … are negligence-based torts which require proof of the basic elements of negligence: duty, breach, proximate cause, and damages."). Accordingly, dismissal is inappropriate under Count Three.

## V. ORDER

IT IS THEREFORE ORDERED that Cottingham and Butler, Inc.'s second motion to dismiss (ECF No. 18) is DENIED. Cottingham's first motion to dismiss (ECF No. 5) is DENIED as moot.

IT IS SO ORDERED this 1st day of June, 2020.

/s/ *Robert T. Dawson*
**ROBERT T. DAWSON**
**SENIOR U.S. DISTRICT JUDGE**