**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION**

| | | |
|---|---|---|
| **CONTAINER LIFE CYCLE** | : | |
| **MANAGEMENT, LLC,** *et al.,* | : | |
| | : | Case No. 6:20-CV-6001 |
| Plaintiffs, | : | |
| | : | Judge Robert T. Dawson |
| v. | : | |
| | : | |
| **SAFETY MANAGEMENT** | : | |
| **SERVICES COMPANY,** *et al.,* | : | |
| | : | |
| Defendants. | : | |

---

## DECLARATION OF KARA M. MUNDY

---

I, Kara M. Mundy, hereby declare and state as follows:

1. I am an attorney with Vorys, Sater, Seymour, and Pease, LLP ("Vorys"). I serve as counsel for Plaintiffs Container Life Cycle Management LLC ("CLCM") and Greif, Inc. ("Greif") (collectively, "Plaintiffs") in the above-captioned case, styled *Container Life Cycle Management, LLC, et al. v. Safety Management Services Company, et al.*, Case No. 6:20-CV-6001(W.D. Arkansas). I make this declaration in connection with Plaintiffs' Motion to Compel Non-Party William Kramer's Subpoena Response, Leave to Conduct a Second Deposition of Mr. Kramer, Motion to Compel Answers, and Motion for Contempt.

2. Attached hereto as **Exhibit 1** is a true and correct copy of the November 18, 2021 subpoena (the "Subpoena") served upon non-party Will Kramer ("Kramer").

3. Attached hereto as **Exhibit 2** is a true and correct copy of e-mail correspondence between Plaintiffs' counsel and Kramer between January 3, 2022 and January 5, 2022.

4. Attached hereto as **Exhibit 3** is a true and correct copy of excerpts from the February 11, 2022 deposition of Kramer.

5. Attached hereto as **Exhibits 4, 5, and 6** are true and correct copies of e-mail correspondence produced by Kramer in partial response to the Subpoena.

I declare under penalty of perjury of the laws of the United States and the State of Ohio that the foregoing is true and accurate based upon my personal knowledge.

EXECUTED this 8th day of March, 2022.


Kara M. Mundy

# Exhibit 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas

| | |
|---|---|
| CONTAINER LIFE CYCLE MANAGEMENT, LLC, et al., | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  6:20-cv-6001 |
| SAFETY MANAGEMENT SERVICES COMPANY, et al., | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    WILLIAM KRAMER
                              5310 Mathews Road, Apt. 5, Middleton, WI  53562

*(Name of person to whom this subpoena is directed)*

☛ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

        See Attachment A.

| Place: Dane County Civil Process | Date and Time: |
|---|---|
| 345 W. Washington Ave., Suite 301 | |
| Madison, Wisconsin 53703 | 12/02/2021 9:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    11/18/2021

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* ___Plaintiffs,___
Container Life Cycle Management LLC and Greif, Inc._____ , who issues or requests this subpoena, are:
Kara M. Mundy | 52 E. Gay Street, Columbus, OH  43215 | kmmundy@vorys.com | 614-464-5646

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  6:20-cv-6001

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

&#10065; I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

&#10065; I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**HOT SPRINGS DIVISION**

| | | |
|---|---|---|
| **CONTAINER LIFE CYLE** | : | |
| **MANAGEMENT, LLC,** *et al.,* | : | |
| | : | Case No. 6:20-CV-6001 |
| Plaintiffs, | : | |
| | : | Judge Robert T. Dawson |
| v. | : | |
| | : | |
| **SAFETY MANAGEMENT** | : | |
| **SERVICES COMPANY,** *et al.,* | : | |
| | : | |
| Defendants. | : | |

---

**SUBPOENA DUCES TECUM**
**EXHIBIT A**

---

TO      William Kramer
           5310 Mathews Road, Apt. 5
           Middleton, WI  53562-2448

**Definitions and Instructions**

    1.     Document. The word "document" is used in its broadest sense and means, by way of illustration and not by way of limitation, the following items, whether printed or recorded or reproduced by any other mechanical process, written, produced by hand, or produced by or stored in a computer, regardless of origin or location, and shall include the original and each non-identical copy or draft thereof: books, records of telephone conversations, summaries or records of personal conversations or interviews, audio recordings of in-person and telephone conversations or interviews, applications, booklets, brochures, catalogues, circulars, magazines, pamphlets, periodicals, bulletins, instructions, minutes, other communications (including, but not limited to, electronic communications and inter- and intra-office communications), purchase orders, bills of lading, bid tabulations, questionnaires, surveys, contracts, agreements, options to purchase, memoranda, memoranda of agreements, assignments, licenses, books of account, orders, invoices, receipts, statements, bills, checks, vouchers, ledger sheets, accounts, journals, canceled checks, bank statements, bank passbooks, confirmations, statements of accounts, analyses, diaries, graphs, notebooks, charts, tables, working papers, plans, indices, summaries of records of meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of accountants or consultants, data sheets, data processing cards, photographs, photographic negatives, phone-records, tape recordings, discs, wire recordings, transcripts of recordings, drawings, motion picture film, advertisements, press releases, drafts, and marginal comments appearing on any such documents, all other written or printed matter of any kind, or any other data compilations from which information can be obtained and translated if necessary.

1

2.     Communication. The word "Communication" means any oral, written, electronic, or other transfer of information, ideas, opinions, or thoughts by any means, from or to any person or thing.

3.     "Relating to" shall mean constituting, comprising, containing, mentioning or describing, containing, enumerating, involving or in any way concerning, pertaining or referring to, being connected with, reflecting upon or resulting from, in whole or in part, directly or indirectly, the stated subject matter.

4.     As employed herein, "and" and "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses that might otherwise be construed to be outside its scope.

5.     "You", "Your" and "Mr. Kramer" refer to William Kramer with a mailing address of 5310 Mathews Road, Apt. 5, Middleton, WI 53562-1064.

6.     "C&B" refers to Cottingham & Butler Inc. and any of its predecessors, successors, parents, subsidiaries, assigns, agents, employees, consultants, attorneys, and any other entities owned in whole or in part by SMS.

7.     "SMS" refers to Safety Management Services Company and any of its predecessors, successors, parents, subsidiaries, assigns, agents, employees, consultants, attorneys, and any other entities owned in whole or in part by SMS.

7.     "Greif" refers to Greif, Inc. and any of its predecessors, successors, parents, subsidiaries, assigns, agents, employees, consultants, attorneys.

8.     "CLCM" refers to Container Life Cycle Management, LLC and any of its predecessors, successors, parents, subsidiaries, assigns, agents, employees, consultants, attorneys.

9.     "CLCM Facilities" refers to container reconditioning facilities located in the State of Wisconsin at 3950 Pennsylvania Avenue, in St. Francis, Wisconsin, 2300 W. Cornell Street, in Milwaukee, Wisconsin, 8570 South Chicago Road in Oak Creek, Wisconsin, and in the State of Arkansas at 142 Technology Drive, Arkadelphia, AR 71923, that are operated by CLCM.

10.    The singular number and masculine gender, as used herein, shall embrace, and be read and applied as, the plural or the feminine or the neuter, as the circumstances may make appropriate, and in order to make the request inclusive rather than exclusive.

11.    If not otherwise defined herein, each word, term, or phrase utilized in this request shall have the meaning ascribed to it in the most recent edition of Webster's New Collegiate Dictionary.

12.    All documents produced pursuant to this request are to be produced as they are kept in the usual course of business, or shall be organized and labeled (without permanently marking the item produced) so as to correspond with the categories of each numbered request hereof or kept segregated by the file(s) in which the documents are contained and the name(s) of

the documents being produced. If such file(s) or document(s) have been removed for purposes of this action or for some other purpose, identify the person who removed the file or document, the title of the file and each sub-file, if any, maintained within the file, and the present location of the file, sub-file, or document.

18.    If you deem any information, documents and/or things sought by these discovery requests to be privileged or otherwise protected from discovery, you must nevertheless provide the following information:

(a)    The nature of the privilege asserted;

(b)    The person asserting the privilege; and

(c)    A description and identification of the requested information, documents and/or things sufficient to frame an appropriate demand for the information or thing and a motion to compel disclosure.

## **Requested Documents**

1.    Complete copies of any and all audio or audio-visual recordings containing statements from any current or former officer, employee, consultant or agent of Greif or CLCM.

2.    Complete copies of any transcripts made of any and all audio or audio-visual recordings containing statements from any current or former officer, employee, consultant or agent of Greif or CLCM.

3.    All documents containing statements, recorded or otherwise, from any current or former officer, employee, consultant or agent of Greif or CLCM.

4.    All documents relating to any safety, health, or environmental audits performed by SMS of any of the CLCM Facilities within the last seven years. This includes, but is not limited to: photos taken on or of the CLCM Facilities, employee surveys, SMS recommendations, SMS spreadsheets listing scores assigned to certain key business sections and e-mails from SMS explaining the spreadsheet's results to Greif or CLCM.

5.    All documents relating to any training provided by SMS to employees of Greif or CLCM at the CLCM Facilities within the last seven years.

6.    All communications between SMS and you as an employee or former employee of SMS concerning CLCM or Greif.

7.    All documents reflecting or comprising communications with Greif or CLCM from January 1, 2015 to present concerning the CLCM Facilities.

8.     All documents obtained from Greif, CLCM, or any employee or former employee of Greif or CLCM within the last seven years, including but not limited to any documents or data downloaded, copied, saved or retrieved from Greif s or CLCM's CMS system or any other system, repositories or files.

9.     All documents and communications referring or relating to Greif or CLCM that you or your lawyers have provided to anyone at the Milwaukee Journal Sentinel or anyone at any regulatory or investigative agency of any municipality, state or federal government, or any local, state or federal government representatives or officials, including but not limited to copies of any and all audio or audio-visual recordings or transcripts of the same containing statements from any current or former officer, employee, consultant or agent of Greif or CLCM.

# Exhibit 2

**From:** Will Kramer <wnkramer@gmail.com>
**Sent:** Wednesday, January 05, 2022 11:55 AM
**To:** Mundy, Kara M. <kmmundy@vorys.com>
**Cc:** Kuhl, John M. <jmkuhl@vorys.com>; Lewis, Kim D. <KDLewis@vorys.com>
**Subject:** Re: [EXTERNAL] Re: Container Life Cycle Mgmt., LLC, et al v. Safety Mgmt. Services Co., et al.

**CAUTION: External Email**

Hi Kara,

At this time, I will respond as follows.

For Demands 1-5, 7, and 8, there are no additional documents beyond what I provided in response to the Tennessen subpoena.

There are a few communications I will provide in response to Demand 6 - all are emails between myself and SMS's internal and outside counsel regarding this litigation. I will provide these prior to the end of the day Friday, January 7, but will strive to provide them sooner (possibly tonight). I will save these as pdfs and email them to you.

I will not produce documents beyond that on the basis of my prior objections.

Thank you!

Will

On Tue, Jan 4, 2022 at 12:26 PM Mundy, Kara M. <kmmundy@vorys.com> wrote:

> Will,
>
>
> Thank you for your prompt reply.  I am not sure I understand your position and ask that you please clarify.  Are you taking the position that you will not respond to the subpoena at all based on your reiterated objections?  Otherwise, please provide us with a date certain by which you will produce responsive documents so that we can plan accordingly.
>
>
> Thank you,
>
>
> Kara Mundy

**From:** Will Kramer <wnkramer@gmail.com>
**Sent:** Tuesday, January 04, 2022 8:09 AM
**To:** Mundy, Kara M. <kmmundy@vorys.com>
**Cc:** Kuhl, John M. <jmkuhl@vorys.com>; Lewis, Kim D. <KDLewis@vorys.com>
**Subject:** [EXTERNAL] Re: Container Life Cycle Mgmt., LLC, et al v. Safety Mgmt. Services Co., et al.


```
CAUTION:  External Email.
```

Hi Kara - unfortunately I am out of the country until January 9 without access to the materials you requested and limited access to emails. Additionally, it is my understanding that the denial of my motion to quash is not the same as an order from the Court to comply with your subpoena, and I reiterate my objections.


Will



On Mon, Jan 3, 2022, 3:56 PM Mundy, Kara M. <kmmundy@vorys.com> wrote:

Will,


We received the attached Order from the Court today denying your Motion to Quash.  Attached is the subpoena to which you are required to respond.  We are overnighting to you an encrypted hard drive that you can use to transfer your responsive files, as well as a postage pre-paid return envelope so that you can send the hard drive back to us.  The password for the hard drive is <mark>UjREhP$L!kh2!d,,</mark> .


Please respond to the subpoena and provide us with a complete set of responsive documents and emails with enough time for us to review the materials in advance of your depositions on January 12, 2022.


Thank you,


Kara Mundy

**Kara M. Mundy**

Attorney at Law

Vorys, Sater, Seymour and Pease LLP
52 East Gay Street | Columbus, Ohio 43215

Direct: 614.464.5669
Fax: 614.719.4709
Email: kmmundy@vorys.com
*www.vorys.com*

From the law offices of Vorys, Sater, Seymour and Pease LLP.

CONFIDENTIALITY NOTICE: This e-mail message may contain confidential and/or
privileged material. Any unauthorized review, use, disclosure or
distribution is prohibited. If you are not the intended recipient, please
contact the sender by reply e-mail and destroy all copies of the original
message. If you are the intended recipient but do not wish to receive
communications through this medium, please so advise the sender immediately.

From the law offices of Vorys, Sater, Seymour and Pease LLP.

CONFIDENTIALITY NOTICE: This e-mail message may contain confidential and/or
privileged material. Any unauthorized review, use, disclosure or
distribution is prohibited. If you are not the intended recipient, please
contact the sender by reply e-mail and destroy all copies of the original
message. If you are the intended recipient but do not wish to receive
communications through this medium, please so advise the sender immediately.

# Exhibit 3

1                  UNITED STATES DISTRICT COURT

2                 WESTERN DISTRICT OF ARKANSAS

3                    HOT SPRINGS DIVISION

4    ----------------------------------------------------------

5    CONTAINER LIFE CYCLE MANAGEMENT
     LLC and GREIF, INC.,
6
                    Plaintiffs,
7
         -vs-                    Case No. 6:20 CV 6001-RTD
8
     SAFETY MANAGEMENT SERVICES CO.
9    and COTTINGHAM & BUTLER, INC.,

10                  Defendants.

11   ----------------------------------------------------------

12

13            Video deposition of WILLIAM N. KRAMER,

14   taken at the instance of the Defendants, pursuant to

15   the Federal Rules of Civil Procedure, pursuant to

16   notice, before Debbie A. Harnen, Registered

17   Professional Reporter and Notary Public in and for the

18   State of Wisconsin, at HILTON GARDEN INN, 770 Regent

19   Street, Madison, Wisconsin, on February 11, 2022,

20   commencing at 9:04 a.m. and concluding at 4:07 p.m.

21

22

23

24

25            Reported by:  Debbie A. Harnen, RPR



```
 1                    A P P E A R A N C E S:

 2
    FOR THE PLAINTIFFS:
 3
         VORYS, SATER, SEYMOUR and PEASE LLP, by
 4            Mr. John M. Kuhl
              52 East Gay Street
 5            Columbus, Ohio 43215
              jmkuhl@vorys.com
 6            614.464.6400

 7
    FOR THE DEFENDANTS:
 8
         FRIDAY ELDREDGE & CLARK LLP, by
 9            Mr. Christopher Heller
              400 West Capitol Avenue, Suite 2000
10            Little Rock, Arkansas 72201
              heller@fridayfirm.com
11            501.376.2011

12                 -and-

13       COTTINGHAM & BUTLER, by
              Ms. Maureen Quann
14            800 Main Street
              Dubuque, Iowa 52001
15            mquann@cottinghambutler.com
              800.793.5235
16

17
    ALSO PRESENT:  Gary R. Martz, Greif General Counsel
18
                   Jon Hansen, video technician
19

20

21

22

23

24

25
```



```
1                        I N D E X

2   EXAMINATION                                      PAGE

3        By Mr. Heller . . . . . . . . . . . . . . 5
         By Mr. Kuhl . . . . . . . . . . . . . . .83
4        By Mr. Heller . . . . . . . . . . . . . 239
         By Mr. Kuhl . . . . . . . . . . . . . . 242
5

6                      E X H I B I T S

7   DEFENDANTS' NUMBER                       PAGE IDENTIFIED

8   Exhibit 1   Employment Agreement - Bates        12
                labeled DF_026309-26316
9   Exhibit 2   Core Values - Bates labeled         14
                DF_026301-26302
10  Exhibit 3   Employment Change Form - Bates      15
                labeled DF_026326
11  Exhibit 4   Exit Interview Checklist - Bates    16
                labeled DF_026329-26331
12  Exhibit 5   Summary of GAP analyses performed   18
                by SMS at CLCM facilities
13  Exhibit 6   SEC Complaint - Bates labeled       24
                DF_018906-28965
14  Exhibit 7   Kramer Timeline - labeled 001-061   24

15  PLAINTIFFS' NUMBER                      PAGE IDENTIFIED

16  Exhibit 2   Application for Employment -       162
                Bates labeled DF_030497-30514
17  Exhibit 10  Document Bates labeled              86
                DF_018906-18964
18  Exhibit 21  Document Bates labeled             203
                GREIF_CLCM_00005208-5210
19  Exhibit 29  Document Bates labeled             114
                DF_030586_04
20  Exhibit 30  Document Bates labeled             135
                GREIF_CLCM_00012560-12615
21  Exhibit 34  Email string among Williams,        97
                Kramer and Rutledge in May/June
22              2020
    Exhibit 35  Prerequisite Verification Form -   102
23              Bates labeled DF_033738-33741
    Exhibit 36  First Day Itinerary - Bates        111
24              labeled DF_033621

25  (Original exhibits attached to the original transcript;
       PDFs provided to attorneys ordering exhibit copies.)
```



1    Q    And did you -- do you recall that Mr. Williams

2         prepared or offered you, I think, a Dropbox link

3         for you to provide those documents to him?

4    A    I think so.

5    Q    And did you provide those documents to him?

6    A    Yes.

7    Q    And what documents were included within what you

8         provided to him?

9    A    I'm not sure.  I think probably the same -- kind

10        of everything I had that I had given to the

11        Milwaukee Journal Sentinel.

12   Q    So whatever you had gathered in connection with

13        your collection of information and material

14        related to Greif and/or the CLCM facilities,

15        whatever you had you gave it to Mr. Williams?

16   A    I think so, yes.

17   Q    Now, in connection with this lawsuit, you received

18        a subpoena from the plaintiffs asking for all of

19        your documents related to what you had gathered

20        and collected in connection with CLCM and Greif.

21   A    Uhm-hm.

22   Q    Do you recall that?

23   A    Yes.

24   Q    And so if I'm understanding this correctly, you

25        voluntarily gave all of those documents to lawyers



```
1          for the defendants, correct?

2     A    Yes.

3     Q    And then when you were subpoenaed in connection

4          with a federal lawsuit, you filed a motion to

5          quash that subpoena?

6     A    Yes.

7     Q    And in your motion to quash -- well, you asserted

8          several objections in your motion to quash,

9          correct?

10    A    Yes.

11    Q    And then the lawyers for the plaintiffs filed an

12         opposition to your motion to quash, right?

13    A    Yes.

14    Q    And then what did you do after you received a copy

15         of the motion to quash -- the service copy, do you

16         recall?

17    A    No.

18    Q    Do you recall sending an email to Ms. Mundy and

19         myself calling us jokes of attorneys and that we

20         had made a bunch of mistakes, and it would be

21         embarrassing if our clients learned of that?

22    A    Yes.

23    Q    Okay.  And you were referring to our opposition to

24         your motion to quash?

25    A    No.
```



1  Q   No.  What were you referring to?

2  A   I was referring to your multiple failed attempts

3      to effect proper service and other procedural

4      errors.

5  Q   Didn't you agree to accept service by email?

6  A   I did, yes.

7  Q   Now, following the court's denial of your motion

8      to quash, we asked you to produce the documents

9      that were originally requested in the subpoena; is

10     that right?

11 A   Yes.

12 Q   And we offered to send you a hard drive with

13     postage prepaid for you to send all those

14     materials back to us, right?

15 A   Yes.

16 Q   And your position is that the court's order

17     denying the motion to quash does not require you

18     to comply with the subpoena; is that correct?

19 A   Yes.

20 Q   All right.  Can you look into the camera and tell

21     the judge why his order denying your motion to

22     quash doesn't require you to comply with the

23     subpoena issued from his court?

24 A   According to my research, the proper procedure and

25     what is often done when someone files an



1          opposition to a motion to quash or a motion to

2          compel is to also request an order to comply with

3          the subpoena, and that was not done, and there was

4          no order.

5     Q    So your position as a practicing attorney is that

6          if someone receives a subpoena and the objections

7          have been overruled by the judge presiding over

8          the case, that an attorney who is served with a

9          subpoena still does not have to comply with the

10         terms of that subpoena?

11    A    Correct.

12    Q    And the documents that were requested through that

13         subpoena are documents that you voluntarily

14         provided to counsel for the defendants in this

15         case; is that correct?

16    A    They're not the same, but they're -- some of them

17         would be, yes.

18    Q    Okay.  What's not the same?

19    A    The entire issue with -- large issue with the

20         subpoena is that it asks for information in a

21         particular format and way and categories, as well

22         as a bunch of emails and communications, and --

23         which I have already provided to Greif in a

24         separate lawsuit; and I don't have it organized

25         that way, and I didn't give them that.  I just



1       deposition?

2   A   I don't think so, no.

3   Q   Have you ever seen the protective order in this

4       case?

5   A   No.

6   Q   Have you been asked to sign it?

7   A   No.

8   Q   And you met with counsel for Cottingham & Butler

9       in advance of Steele Johns' deposition, correct?

10  A   Yes.

11  Q   In fact, did you meet in this very room?

12  A   Yes.

13  Q   All right.  Tell me about what took place during

14      that meeting.

15              MR. HELLER:  I'm going to object to work

16      product privilege.

17  BY THE WITNESS:

18  A   Basically, we discussed -- I think a lot of what

19      we went through was my --

20              MR. HELLER:  Let me stop you for a

21      minute, Mr. Kramer.

22              So I don't know if we want to

23      discuss this on the record, but it gets back to

24      our understanding about how these depositions are

25      going to work and whether there's an opportunity



 1   at some point to follow through on these

 2   objections and make these things confidential.

 3            MR. KUHL:  Anything in these depositions

 4   can be designated confidential.  My understanding

 5   of our agreement is that all -- everything in the

 6   deposition is to be treated as confidential, and

 7   then later we will designate certain things as not

 8   needing to be confidential.

 9            So as it relates to this

10   deposition, everything will be treated as

11   confidential until such time as either one party

12   or the other side says we don't believe it's

13   confidential or we have to fight about it.

14            MR. HELLER:  So are you saying that I

15   don't have to advise him not to answer to protect

16   the work product privilege?

17            MR. KUHL:  Well, I'm saying you don't

18   have any work product privilege in connection with

19   a conversation with a witness that you had to

20   subpoena to get here today to testify.

21            So there is no work product

22   privilege.  It's been waived or -- if it ever

23   existed, but as it relates to how it might be

24   resolved at a later time, I guess that would be

25   for the court.  I'm not sure I understand what



1        you're asking actually.

2              MR. HELLER:  Well, go ahead.  That's

3        fine.

4    BY MR. KUHL:

5    Q    I'd like to go back to the meeting --

6              MR. HELLER:  Let me make it clear.  I'm

7        not waiving that objection.

8              MR. KUHL:  Well, are you instructing the

9        answer not to -- are you instructing the witness

10       not to answer on the basis that you have work

11       product protection of your conversations with him?

12             MR. HELLER:  No.

13             MR. KUHL:  All right.

14   BY MR. KUHL:

15   Q    So Mr. Kramer, I'd like to talk about the meeting

16       that you had in advance of Steele Johns'

17       deposition.

18                  Who was at that meeting?

19   A    Attorney Heller and Attorney Quann.

20   Q    How long did that meeting last?

21   A    A couple of hours.

22   Q    What time did it start?  Did it start around

23       breakfast?

24   A    I think it was afternoon.

25   Q    Did you have lunch in connection with that



1        meeting?

2    A    No.

3    Q    Did you have dinner following the meeting?

4    A    No.

5    Q    Were you provided any documents?

6    A    I don't think so.

7    Q    Did you review any documents?

8    A    I may -- I think the -- which one was it?  I think

9         I saw this Exhibit 5, Summary of the GAP analyses;

10        and we reviewed what's marked as Exhibit 7, but I

11        don't know.  I may have just been looking at my

12        copy.

13   Q    All right.  Did you bring documents with you to

14        that meeting?

15   A    Not -- I just had my computer, so digitally.

16   Q    And during that meeting, for example, did you have

17        access to all of the recordings that you made?

18   A    Yes.

19   Q    Did you review recordings during that meeting?

20   A    Reviewed the transcripts.  I don't think the

21        recordings themselves.

22   Q    Did you hire a court reporter to transcribe those

23        recordings?

24   A    No.

25   Q    That's too bad.



```
 1                      So you referred to what I think
 2         you've got in front of you as Exhibit 7, and you
 3         also referred to Exhibit 5?
 4    A    Yes.
 5    Q    Do you recall looking at any other documents
 6         during your meeting in advance of Steele Johns'
 7         deposition?
 8    A    No.
 9    Q    Let's talk about what you did to prepare for
10         today's deposition.
11    A    Uhm-hm.
12    Q    Did you have a meeting with Mr. Heller and
13         Ms. Quann?
14    A    Yes.
15    Q    And when was that?
16    A    Yesterday.
17    Q    Where did it take place?
18    A    This room.
19    Q    How long did it last?
20    A    Two and a half hours.
21    Q    Were you shown any documents?
22    A    This Exhibit 5 again, the Exhibit 7, Exhibit 6.  I
23         think that's it.
24    Q    So as it relates to the Exhibits 1, 2, 3, you did
25         not review those yesterday in connection with your
```



```
 1        prep session?

 2   A    We discussed the employment agreement, Exhibit 1,

 3        but not these other ones.

 4   Q    When you say discussed it, did you review it or

 5        did you discuss it?

 6   A    Discuss.

 7   Q    So generally, you discussed that there was an

 8        employment agreement, but you weren't looking at

 9        it in connection with your preparation session?

10   A    Yes.

11             MR. HELLER:  Object to the form of that

12        question.

13   BY MR. KUHL:

14   Q    I just want to make sure.  Did you look at

15        Exhibit 1 yesterday in connection with your

16        preparation?

17   A    I really don't think so, no.

18   Q    Did you look at Exhibit 2 yesterday in connection

19        with your preparation?

20   A    No.

21   Q    Did you look at Exhibit 3 yesterday in connection

22        with your preparation?

23   A    No.

24   Q    Did you look at Exhibit 4 yesterday in connection

25        with your preparation?
```



WILLIAM N. KRAMER                                    February 11, 2022
CONTAINER LIFE CYCLE vs SAFETY MGMT                              109

```
 1   A   No.
 2   Q   Exhibit 5, we've already agreed you did look at
 3       that.
 4   A   Uhm-hm.
 5   Q   You gotta say "yes."
 6   A   Yes.
 7   Q   Thank you.
 8               And then I think you also indicated
 9       that you looked at Exhibit 7?
10   A   Yes.
11   Q   Did you look at the whistleblower complaint?
12   A   Yes.
13   Q   Any other documents that you looked at that aren't
14       sitting there in front?
15   A   No.
16   Q   Did you review any deposition transcripts
17       yesterday?
18   A   No.
19   Q   Other than the Steele Johns deposition transcript,
20       have you been provided with any other transcripts
21       in this case?
22   A   No.
23   Q   Did the attorneys for Cottingham & Butler tell you
24       the types of questions they were going to ask you?
25   A   Yes.
```



1 Q   And did they tell you the types of answers they

2     were seeking to get?

3 A   No.

4 Q   Did you discuss what answers would be helpful to

5     the defendants' case?

6 A   No.

7 Q   Did you discuss or have you ever discussed

8     defendants' legal defense strategy for this case

9     with Chris Williams or any of the other lawyers

10    representing Cottingham & Butler?

11 A  I think Chris just that -- that discussion of that

12    he -- Cottingham & Butler is going to argue that

13    Greif was breaking the law and focus on that in

14    terms of the disclosures.

15 Q  Prior to today, have you ever had your deposition

16    taken before?

17 A  No.

18 Q  Have you ever provided sworn testimony in any type

19    of proceeding?

20 A  Can you define sworn testimony?

21 Q  Testimony given under oath.

22 A  In my divorce, we had to certify various things

23    were true.

24 Q  I'm not interested in learning about your divorce,

25    but --



1  A    Uhm-hm.  No, I don't think that's correct.

2  Q    Okay.  So you did provide those emails to us in

3       response to the subpoena?

4  A    I guess they would have been in the response to

5       the other -- the prior subpoena.

6  Q    Just to be very clear, you were issued a subpoena

7       for all of your records related to all of the

8       activity that you did in preparing Exhibit 7 and

9       Exhibit 10 and all the information you collected

10      from Greif and CLCM, and you were asked in a

11      subpoena in this case to provide that information

12      to the plaintiffs, right?

13 A    Yes.

14 Q    And you have refused to provide that information

15      to the plaintiffs?

16 A    Yes.

17 Q    You have, however, voluntarily provided that same

18      information to defendants and their counsel?

19 A    Again, not fully, not the same way, but yes.  Some

20      materials I provided to them, yes.

21 Q    Would you say most of it?

22 A    Yes.

23 Q    Are you getting compensated by Cottingham & Butler

24      or its law firm for your time?

25 A    No.



1        I think, in December.

2   Q    And for purposes of the record, you're looking at

3        what?

4   A    Exhibit -- Plaintiffs' Exhibit 30.

5                        This may not be the full -- or the

6        more complete.  There's a more complete version of

7        this.  So I don't think it's in this one.

8   Q    Okay.  And that more complete one, that would have

9        been the one that you sent over to the counsel for

10       the defendants, right?

11  A    Yes.

12  Q    All right.  So the version that plaintiff has is

13       not your complete collection of information from

14       what you recorded or observed or gathered related

15       to CLCM and Greif?

16  A    I don't know.  This -- this version is not.

17  Q    And the complete version would be a document that

18       was responsive to the subpoena that we served upon

19       you in this case, correct?

20  A    Yes.

21  Q    And for which you have refused to produce to the

22       plaintiffs in this case, correct?

23  A    Yes.

24  Q    So I can't ask you about it because I've never

25       seen it before.



1        there federal -- someone from the federal

2        Department of Transportation at the first

3        meeting?

4    A   No.

5    Q   Do you ever recall meeting with anyone from the

6        Federal Department of Transportation?

7    A   No.

8    Q   How about OSHA?  Did you meet with anyone from

9        OSHA?

10   A   No.

11   Q   How about any state or federal politician?

12   A   Yes.

13   Q   Let's start with federal.  Who did you meet with?

14   A   Tammy Baldwin, a member of her staff; Gwen Moore,

15       a member of her staff.  I think that's it federal.

16   Q   And when did those meetings take place?

17   A   Around that same time, in probably early 2017.

18   Q   Have you had any contact with anyone from

19       Senator Baldwin's office between 2018 and today?

20   A   I'm going to assert attorney-client privilege on

21       that.

22   Q   Between who?  In other words, what attorney -- who

23       is the attorney that you are asserting the

24       privilege with?

25   A   My -- Kohn, Kohn & Colapinto.



```
 1              MR. KUHL:  Can you repeat the question
 2         to which he asserted the attorney-client
 3         privilege?
 4                   (Record read as requested.)
 5    BY MR. KUHL:
 6    Q    I'm not asking for the communications themselves.
 7         I'm asking simply have you had any contact with
 8         anyone at their office between 2018 and today?
 9    A    Sure, yes.
10    Q    When is the last time that you've been in contact
11         with anyone from Senator Baldwin's office most
12         recently?
13    A    This week.
14    Q    And were your attorneys at Kohn present when you
15         had that contact?
16    A    No.
17    Q    Did they participate on the phone call?
18    A    No.
19    Q    All right.  Tell me about that conversation that
20         you had with whoever you spoke with in
21         Ms. Baldwin's office.
22    A    I don't think I will.
23    Q    Under what basis?
24    A    I don't know.  I don't -- I'm not going to tell
25         you what's going on with the government
```



1          investigation.  It's not related to this.

2   Q    The government investigations that you triggered

3          by disclosing information in the newspaper, you're

4          asserting are not relevant to this case?

5   A    Not relevant now to the basis of this case.

6   Q    What did you talk with -- who did you talk with in

7          Senator Baldwin's office this week?

8   A    What's her name?  Colleen something.

9   Q    And tell me what you talked about.

10  A    No thanks.

11  Q    Look into the camera, and tell the judge you're

12         refusing to answer that question.

13  A    Okay.  I am refusing to answer that question.

14  Q    And what is the basis on which you're refusing to

15         answer that question?  Tell the judge.

16  A    Because this company is intentionally --

17         essentially murdering people, and they're using

18         this as a way to find out what the government is

19         doing, and I don't think that's appropriate.

20  Q    Anything else?

21  A    No.

22  Q    Okay.  Other than your conversation last week,

23         when was your most recent communication with

24         someone from Senator Baldwin's office prior to

25         last week's or -- was it this week or last week?



1   A   What is this?

2   Q   Today's Thursday.

3   A   This week.

4   Q   Okay.  Prior to this week's conversation with

5       Ms. Baldwin -- excuse me -- with someone from her

6       office, you didn't speak with Senator Baldwin this

7       week, I assume, right?

8   A   No.

9   Q   Okay.  When was your last contact prior to this

10      week?

11  A   I think early January.

12  Q   January of this year?

13  A   Yes.

14  Q   Were your attorneys present on that call?

15  A   No.

16  Q   What did you talk about?

17  A   Again, I'm not going to answer that.

18  Q   And the reason you're not going to answer that is

19      why?

20  A   Because I'm not going to provide you with current

21      information about what I'm talking to elected

22      officials about in relation to your legal

23      activity.

24  Q   Prior to your conversation with -- who did you

25      speak with in Ms. Baldwin's office?



1   A   Colleen something.

2   Q   Did you exchange emails with anyone in

3       Ms. Baldwin's office?

4   A   Yes.

5   Q   Have you exchanged those emails recently?

6   A   Yes.

7   Q   Did you copy your attorneys on those emails?

8   A   No.

9   Q   Prior to your January conversation with the

10      staffer from Senator Baldwin's office, when is

11      the -- going back, when is the next time, looking

12      back, that you had a conversation with someone

13      from Senator Baldwin's office?

14  A   She and I had been in contact every couple of

15      months since maybe January 20-- -- what is it --

16      January 2021, I guess.

17                  So, you know, it would be -- it was

18      probably that January and then maybe March and

19      then August and then -- let's see -- September and

20      then probably the next was December.

21  Q   So since January of 2021, you've been having

22      semi-monthly or every other month, it sounds like,

23      communications with someone from Senator Baldwin's

24      office?

25  A   Yes.



1    Q    And are you going to refuse to answer questions

2         regarding the subject matter of any of those

3         conversations?

4    A    The subject matter is your illegal activity.

5    Q    Are you going to refuse to answer questions

6         regarding the specifics of the conversations to

7         the extent that you're able to recall them?

8    A    Yes.

9    Q    Okay.  Prior to January 2021 -- so I think you

10        said you've been in contact regularly, as you've

11        defined it, from January of 2021 through this

12        week.  What about the period of time, 2017 through

13        January 2021?  Were you communicating with anyone

14        in Ms. Baldwin's office during that time period?

15   A    So 2017, yes, while all the reporting was

16        initially going on.  And again, all of those

17        communications you folks already have.

18   Q    You keep saying that.

19   A    Yeah.  And it's true.  So I don't know.

20   Q    How is it true?  Do I have it?

21   A    He does.

22   Q    He has it how?

23   A    Because I provided all that material --

24   Q    Are you defining what he has?

25   A    I provided all the material to Greif.



```
 1   STATE OF WISCONSIN   )
                          )  SS:
 2   COUNTY OF MILWAUKEE  )

 3              I, Debbie A. Harnen, a Registered

 4   Professional Reporter and Notary Public in and for the

 5   State of Wisconsin, do hereby certify that the

 6   deposition of WILLIAM N. KRAMER was reported by me and

 7   reduced to writing under my personal direction.

 8              I further certify that said deposition

 9   was taken at HILTON GARDEN INN, 770 Regent Street,

10   Madison, Wisconsin, on February 11, 2022, commencing at

11   9:04 a.m. and concluding at 4:07 p.m.

12              I further certify that I am not a relative

13   or employee or attorney or counsel of any of the

14   parties, or a relative or employee of such attorney or

15   counsel, or financially interested directly or

16   indirectly in this action.

17              In witness whereof, I have hereunto set my

18   hand and affixed my seal of office at Milwaukee,

19   Wisconsin, on February 17, 2022.

20

21                          Debbie A. Harnen - Notary Public
                            In and for the State of Wisconsin
22

23   My Commission Expires:  July 27, 2022.

24

25
```



WILLIAM N. KRAMER                                    February 11, 2022
CONTAINER LIFE CYCLE vs SAFETY MGMT                              247

```
 1   STATE OF WISCONSIN    )
                           ) SS:
 2   COUNTY OF MILWAUKEE   )

 3

 4             I, WILLIAM N. KRAMER, do hereby certify

 5   that I have read the foregoing transcript of

 6   proceedings, taken February 11, 2022, at HILTON GARDEN

 7   INN, 770 Regent Street, Madison, Wisconsin, and the

 8   same is true and correct except for the list of

 9   corrections noted on the annexed page.

10

11             Dated at _____

12   this _____ day of _____, 2022.

13

14                        _____
                          WILLIAM N. KRAMER
15

16

17

18

19

20

21

22

23

24

25
```



# Exhibit 4

                    **Will Kramer <wnkramerothers@gmail.com>**

---

## FW: Greif/CLCM Pleadings

7 messages

---

**CHRIS WILLIAMS** <CWILLIAMS@cottinghambutler.com>          Wed, Jan 8, 2020 at 3:42 PM
To: "wnkramer@gmail.com" <wnkramer@gmail.com>


Will, wanted to share these with you as well.  Most notably, you might want to read our answer.


Can we set up some time next week to go a little deeper into the history of all of this?
Phone call or I'm happy to come up to Madison.  Perhaps next Thursday or Friday?


# Chris Williams

Assistant Vice President, Quality and Compliance

Counsel

O  563.587.5471   M  563.581.4010

cwilliams@cottinghambutler.com

---

**From:** Christopher Heller <Heller@fridayfirm.com>
**Sent:** Wednesday, January 8, 2020 3:32 PM
**To:** CHRIS WILLIAMS <CWILLIAMS@cottinghambutler.com>
**Subject:** Greif/CLCM Pleadings


[EXTERNAL SENDER: ]

Chris – Here are some file-marked documents for you – our motion to dismiss C&B, our
brief supporting that motion, and our answer on behalf of Safety Management and C&B –
all filed today. CH

CHRISTOPHER HELLER  |  ATTORNEY

Heller@fridayfirm.com   |   Direct: (501) 370-1506   |   Fax (501) 244-5344

400 West Capitol Avenue, Suite 2000

Little Rock, Arkansas 72201-3522  |  www.FridayFirm.com

This e-mail message and any attachments contain confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. If you have received this e-mail in error, please immediately notify us by return e-mail or by telephone at 501-370-1506 and delete this e-mail. Please note that if this e-mail contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by Friday, Eldredge & Clark, LLP. Receipt of e-mail does not establish an attorney-client relationship.

**3 attachments**

 **005_DFS_ Motion to Dismiss.PDF**
158K

 **006_DFS_ Brief in Support of Motion to Dismiss.PDF**
356K

 **007_Answer.PDF**
380K

---

**Will Kramer** <wnkramer@gmail.com>                    Wed, Jan 8, 2020 at 5:49 PM
To: CHRIS WILLIAMS <CWILLIAMS@cottinghambutler.com>

Hi Chris,

Thanks, I'll take a look! I'm happy to schedule something for next week - I'm fine with whichever you'd prefer, in person or via phone. Do you have any estimate of how long you might need? I generally end work at 4.

Will
608-440-4059

[Quoted text hidden]

**Will Kramer** <wnkramer@gmail.com>                                    Thu, Jan 16, 2020 at 12:44 PM
To: CHRIS WILLIAMS <CWILLIAMS@cottinghambutler.com>

Hey Chris - attached is the master document I mentioned. The informal transcripts of my recordings don't start until about half way down. I'll work on getting you the rest of the stuff tonight, but it should make for interesting reading in the meantime.

[Quoted text hidden]

 **Background and timeline.docx**
90K

**Will Kramer** <wnkramer@gmail.com>                                    Fri, Jan 17, 2020 at 6:28 AM
To: CHRIS WILLIAMS <CWILLIAMS@cottinghambutler.com>

Chris,

The files are still uploading, so I'll have to get you the link this weekend. There's also some additional stuff that I've compiled piecemeal over the years that I'll try to organize and upload this weekend as well.

Will
608-440-4059

[Quoted text hidden]

**CHRIS WILLIAMS** <CWILLIAMS@cottinghambutler.com>                     Fri, Jan 17, 2020 at 8:43 AM
To: Will Kramer <wnkramer@gmail.com>

Sounds good Will.  Why don't you upload it Sunday night so its not up all weekend.  We block dropbox so I'll need IT help (so I won't pull the docs until Monday)


Chris Williams

Assistant Vice President, Quality and Compliance

Counsel

O  563.587.5471  M  563.581.4010

cwilliams@cottinghambutler.com

**From:** Will Kramer <wnkramer@gmail.com>
**Sent:** Friday, January 17, 2020 6:28 AM
**To:** CHRIS WILLIAMS <CWILLIAMS@cottinghambutler.com>
**Subject:** Re: FW: Greif/CLCM Pleadings


[EXTERNAL SENDER: United States]

[Quoted text hidden]

---

**Will Kramer** <wnkramer@gmail.com>                      Mon, Jan 20, 2020 at 5:53 AM
To: CHRIS WILLIAMS <CWILLIAMS@cottinghambutler.com>

https://www.dropbox.com/transfer/AAAAAP7QeHhiPwQYHkHa6TcS5dsdNK
t0qR2PdJbEYjc490_yn5_YAF8
Password: pVKqI!q21

[Quoted text hidden]

---

**CHRIS WILLIAMS** <CWILLIAMS@cottinghambutler.com>       Mon, Jan 20, 2020 at 8:29 AM
To: Will Kramer <wnkramer@gmail.com>


We are working on it. Be back to you when its done

[Quoted text hidden]

# Exhibit 5

# Exhibit 6